Chief Judge Wilkinson filed an opinion concurring in the denial of rehearing en banc. Judge Luttig filed an opinion dissenting from the denial of rehearing en banc.
The Court denies the petition for rehearing and petition for rehearing en banc.
Entered at the direction of Chief Judge Wilkinson for the Court.
WILKINSON, Chief Judge,
concurring in the denial of rehearing en banc:
The panel opinion sets forth the basis for its decision, and I see no need to repeat that earlier discussion. See Robles v. Prince George’s County, 302 F.3d 262 (4th Cir.2002). Inasmuch as my good colleague has written in dissent, however, I offer these brief thoughts in response.
To read the dissent, one would think that the panel’s decision had in some way been approving of the officers’ behavior in this case. Far from it. The opinion disapproves what happened here in no uncertain terms. It condemns the conduct as “Keystone Kop activity” that was “foolish and unorthodox.” Id. at 271. It recognizes *438 that the officers’ actions were “immature” and “adolescent.” Id. at 270, 273. The decision leaves no doubt this type of conduct is unacceptable.
The panel also rejected the government’s purported justification for the incident. According to Prince George’s County, Montgomery County had been reluctant to accept any custody transfers of detainees who belonged to Montgomery. Prince George’s contended that the so-called prank here was merely a misguided attempt to convince neighboring Montgomery County to be more receptive to transfers of custody when the detainee was subject to outstanding warrants in Montgomery. Id. at 269. The panel rejected that assertion, finding that “it was hardly necessary to tie someone to a metal pole in a deserted parking lot, for however brief a time, in order to effect a transfer of custody.” Id.
The panel also concluded that Robles had offered sufficient evidence that he suffered more than de minimus injury, but that issue was close. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Riley v. Dorton, 115 F.3d 1159 (4th Cir.1997) (en banc). After all, Robles was left alone for only 10 minutes, during which time no one bothered him. He concedes that he suffered no physical injury and that the officers told him that someone would pick him up there later. He offered no objective evidence (e.g. lost wages or medical expert testimony) to support his claim of psychological injury. In concluding that Robles had presented a triable issue of more than de minimus injury, the panel again gave Robles, not the officers, the benefit of the doubt.
Finally, the panel found a constitutional violation which allowed the plaintiff to proceed before a jury on his due process claim. It recognized that even if the officers were merely acting immaturely, and even if the panel accepted their assertion that they acted without specific intent to punish, due process guarantees were still implicated. The panel clearly acknowledged that even so-called police pranks of short duration and without any evidence of physical abuse can rise to the level of a constitutional violation. Id. at 269-70.
What the panel was unwilling to do was to take this holding of first impression and strip the qualified immunity defense of any notice component whatsoever. While stupid or inappropriate behavior on the part of the police can rise to the level of a federal constitutional violation, not every violation of state law does so. The Constitution is not a “font of tort law” to be “superimposed upon whatever systems may already be administered by .the States.” Id. at 271 (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). Thus, the fact that the officers “clearly appreciated the wrongfulness of their actions” does not mean that they understood their actions to be a violation of the federal Constitution. Id. at 273. The Supreme Court has made clear that the very vagaries of the Due Process Clause mean that a specific enunciation of the principles of constitutional liability is required. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), conduct must violate clearly established constitutional rights. Id. at 817-18, 102 S.Ct. 2727. And under Anderson the contours of those rights must be clear. 483 U.S. at 640, 107 S.Ct. 3034. To equate knowledge of wrongfulness in a generic sense with knowledge of unconstitutionality in a specific sense is not consistent with the rule of law. The latter requires notice, something to which even the worst criminal wrongdoer is entitled.
*439 In reasoning as it did, the panel followed the two-step analysis in Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Under step one of that analysis, if a constitutional violation is found then it will nearly always be a “bad act.” In fact the constitutional violation in Wilson could be argued to be a far more invasive act than the incident the panel confronted here. If every bad act under step one of the Wilson analysis sufficed by itself to answer the step two qualified immunity inquiry, there would simply be no qualified immunity defense. The district court felt strongly that the officers had not been placed on notice that their behavior, however dumb, violated a clearly established constitutional right.
My dissenting brother quotes at length from the majority’s analysis under the first step of Wilson. The panel naturally relied on general language in Bell v. Wolfish to find a constitutional violation on these specific facts. The dissent indicates that the language of the step one analysis detailing the unconstitutionality of the officers’ actions also suffices to satisfy the second prong of Wilson. However, the pitfalls of this approach should be apparent. If a court’s general explanation of why an act is unconstitutional also suffices to supplant the need for specific notice, then there will be no independent force to the qualified immunity inquiry at all. The two steps of an analysis which the Supreme Court clearly intended to be sequential and distinct will simply collapse.
The concept of notice is rooted in case law. The panel emphatically did not require the plaintiff to come forward with a case on all fours with the present one in order to abrogate the qualified immunity defense. See Anderson, 483 U.S. at 640, 107 S.Ct. 3034. It pressed for even one case that would put the officers on fair notice of a constitutional infraction, but all the cases plaintiff advanced involved much more egregious or far different circumstances than those present here. The plaintiff was unable to provide a single decision to illustrate even the general point that a fleeting or misguided prank rose to the level of a constitutional violation. Wilson requires that a plaintiff point to at least some pertinent authority. 526 U.S. at 617, 119 S.Ct. 1692. Plaintiff provided none at all.
Indeed plaintiffs major case, Hope v. Pelzer, — U.S. -, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), not only came down six years after the incident in question here, but was also so factually far afield as not to serve notice of any sort. And even under the far more egregious circumstances in Hope, the Court still divided sharply over the viability of the qualified immunity defense. It is impossible to compare a 10 minute incident with no physical abuse whatsoever to what the Supreme Court described in Hope as the “restricted position of confinement for a 7 hour period,” which involved “exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation Of bathroom breaks that created a risk of particular discomfort and humiliation.” Id. at 2514. The Court in Hope went out of its way to stress the extended time period and the gratuitous-infliction of pain, none of which, for all the stupidity of this behavior, came close to happening here.
The dissent fares no better, than the plaintiff in citing even one case that is even factually in the neighborhood with this one. It simply contents itself with repeating the indisputable proposition that the behavior here was bad. But the Supreme Court requires that the availability of qualified immunity be determined through an examination of the case law, lest judging *440 take leave of the touchstone of unlawfulness and become little more than a visceral exercise. “I know it when I see it” is not a substitute for qualified immunity analysis. In Wilson, the Court noted pointedly that “[pjetitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident that clearly established the rule on which they seek to rely.” 526 U.S. at 616, 119 S.Ct. 1692. Further, the plaintiffs failed even to identify “a consensus of cases of persuasive authority such that a reasonable officer” would have notice as to the unconstitutionality of his actions. Id. Likewise, in Hope the Court recognized the relevance of pertinent case law, holding that earlier circuit case law had put the defendants squarely on notice that they were violating the plaintiffs constitutional rights. 122 S.Ct at 2516 (referencing Gates v. Collier, 501 F.2d 1291, 1306 (Former 5th Cir.1974)). While Hope certainly did not require prior cases to have fundamentally similar facts, neither did it take leave of the need to inquire into the case law to give at least a semblance of specificity to what would otherwise be general and abstract constitutional principles.
These basic, simple principles worked well here. The officers did not go unpunished. In finding a constitutional violation, the panel allowed the plaintiff to proceed before a jury on his state due process claim for which Maryland provides no qualified immunity defense. Robles, 302 F.3d at 273. The district court believed that the first jury’s award of well over a half a million dollars for a 10 minute incident in which there was probable cause to arrest and no evidence of verbal or physical abuse was too high. It offered the plaintiff $240,000 or the opportunity for a new trial, a course which is well settled under our precedent. Id. at 268. Plaintiff could have taken the $240,000 and banked it. Instead, he decided to roll the dice. An extensive trial was held on the issue of damages and the jury came back with an award of $40,000. Id. The panel upheld the jury award. What it was not prepared to do, however, was relieve the plaintiff of the consequences of a strategic decision that in hindsight the plaintiff wished he had made differently.
This was, in short, a case in which the system worked. It makes good sense to allow state law to hold officers to strict account while the parameters of federal violations are fairly defined. Moreover, the proper precedent has been established for the future. Police officers have been put on the clearest notice in this circuit that even brief episodes of foolishness implicate due process guarantees. And the plaintiff has had his day in court — and indeed recovered — on the very claim he is now complaining about.*
The basic point, however, pertains to the simple fairness of giving even unpopular parties proper notice. The Supreme Court requires that we do so, and we are not at liberty to disregard the discipline of its analysis. In United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), the Court made clear that officers in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as defendants charged with the criminal offense defined in 18 U.S.C. *441 § 242. “The fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.” Id. at 270-71, 117 S.Ct. 1219. Police officers do bad things. Criminal defendants do bad things. But due process of law belongs to both.

 The dissent asserts that the Fourth Amendment supplies the appropriate analytical framework, rather than the Due Process Clause. This is incorrect. See Riley v. Dorton, 115 F.3d 1159 (4th Cir.1997) (en banc). The ill-advised decision to cuff Robles does not eliminate the fact that he was validly arrested and held for an hour prior to the cuffing. The cuffing was part of a crude prisoner transfer, not a fresh seizure or arrest; it was a confinement pending arraignment similar to that in the station house in Riley. That fact that Riley was ultimately arraigned while Robles was not in no way changes the analysis.